# IN THE SUPREME COURT OF IOWA

No. 19–1159

Submitted September 17, 2020—Filed January 29, 2021

**STATE OF IOWA,**

>Appellee,

vs.

**DA'QUON BOLDON,**

>Appellant.

---

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

The defendant challenges the sentence imposed following convictions on pleas of guilty. **AFFIRMED.**

McDonald, J., delivered the opinion of the court, in which all justices joined. Appel, J., filed a special concurrence.

Martha J. Lucey, State Appellate Defender, Mary K. Conroy (argued), Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Tyler Buller (argued), Assistant Attorney General, Brian Williams, County Attorney, and Brad Walz, Assistant County Attorney, for appellee.

**McDONALD, Justice.**

Da'Quon Boldon pleaded guilty to possession of a firearm by a felon, in violation of Iowa Code section 724.26(1) (2018), interference with official acts while armed with a firearm, in violation of Iowa Code section 719.1(1)(*f*), and carrying weapons, in violation of Iowa Code section 724.4(1). In this direct appeal, Boldon asserts two challenges to his sentence: (1) the prosecutor breached the parties' plea agreement when the prosecutor failed to recommend the bargained-for sentence; and (2) the district court improperly considered Boldon's juvenile offense history as an aggravating factor at sentencing. In addition to those issues, Boldon contests the applicability and constitutionality of new legislation that changes a defendant's right to direct appeal from a conviction following a guilty plea and that redirects the presentation of claims of ineffective assistance of counsel from direct appeal to postconviction relief. *See* 2019 Iowa Acts ch. 140, §§ 28, 31 (codified at Iowa Code §§ 814.6(1)(*a*)(3), 814.7 (2020)).

I.

Boldon was charged in two separate cases, which were subsequently consolidated, with possession of a firearm by a felon, interference with official acts while armed with a firearm, and carrying weapons. The minutes of testimony show officers initiated a traffic stop of a vehicle. As the vehicle began to stop, the passenger door opened and two males, including Boldon, exited the car and ran. One of the pursuing officers observed Boldon had a large object in his hand. The officer saw Boldon extend his arm and throw what the officer believed to be a gun. After a short chase, the officer apprehended Boldon. After apprehending Boldon, the officer shined a flashlight in the area where he saw Boldon throw the large object. On the ground there was a handgun.

Boldon pleaded guilty pursuant to a plea agreement on March 25, 2019. The plea agreement provided Boldon would plead guilty to all three counts but be free to argue for any sentence. The State agreed to recommend concurrent sentences but be free to argue for incarceration. The parties agreed all fines would be suspended. During the plea colloquy, Boldon confirmed his understanding of the plea agreement. The district court asked Boldon if he understood the sentences could be "stacked together" for a total term of incarceration not to exceed twelve years, and Boldon stated he understood. The district court asked Boldon whether he understood that it would be up to the sentencing court to determine Boldon's sentence, and Boldon stated he understood.

The district court accepted Boldon's guilty pleas and set the matter for sentencing on May 30. Boldon's counsel moved to continue sentencing due to a scheduling conflict, and the district court granted the motion. Boldon's sentencing was continued twice more. Boldon was ultimately sentenced on July 1.

Between the time of Boldon's guilty plea and the time of sentencing, the general assembly passed and the Governor signed an omnibus crime bill. *See* 2019 Iowa Acts ch. 140. The new law went into effect on the day of Boldon's sentencing. There are two specific provisions of that legislation implicated in this appeal.

First, the omnibus crime bill changed a defendant's right to direct appeal from a conviction following a guilty plea. Iowa Code section 814.6 now provides:

> 1. Right of appeal is granted the defendant from:
>
> *a.* A final judgment of sentence, except in the following cases:
>
> (1) A simple misdemeanor conviction.

(2) An ordinance violation.

(3) A conviction where the defendant has pled guilty. This subparagraph does not apply to a guilty plea for a class "A" felony or in a case where the defendant establishes good cause.

Prior to this change, a defendant had the right to appeal following any conviction except in cases of simple misdemeanor and ordinance violations. *See* Iowa Code § 814.6(1)(*a*) (2018).

Second, the omnibus crime bill required all claims of ineffective assistance of counsel be decided in the first instance in postconviction-relief proceedings and not on direct appeal. Iowa Code section 814.7 (2020) now provides:

An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes, and the claim shall not be decided on direct appeal from the criminal proceedings.

Prior to this change, a defendant could raise a claim of ineffective assistance of counsel on direct appeal, *see* Iowa Code § 814.7(2) (2018), and appellate courts had the authority to decide the claim or preserve the claim for postconviction-relief proceedings, *see id.* § 814.7(3).

At the sentencing hearing, the prosecutor made the following sentencing recommendation:

In counts one of both case numbers FECR226296 and FECR226943, the State's recommending a $750 suspended fine plus surcharge and court costs and five years in prison.

On count two of FECR226943, the carrying weapons, the State's recommending a $625 suspended fine plus surcharge and court costs and two years in prison. The State is recommending that the counts run concurrently with each other.

The State is recommending a prison sentence on several factors.

The prosecutor then identified factors militating in favor of a prison sentence. These factors included the facts and circumstances of the offense; the defendant's failure to maintain employment; the defendant's continued drug use while on pretrial supervision, as evidenced by nine positive urinalysis tests; the defendant's failure to attend the required classes while on pretrial supervision; and the defendant's "horrible record in juvenile court as far as adjudications."

Boldon's counsel argued for a deferred judgment. He argued for leniency due to the defendant's age:

> There's no hiding the fact that Mr. Boldon has a poor history as a juvenile and this current offense occurred as he was a juvenile as well. He was 17 years old. He's currently 18. His birthday is in November.
>
> I'm sure the Court's aware, and frankly, the justice system is aware that juveniles simply do not operate the same way that adults do. They're more impetuous. They don't understand the risks associated with activities nor the consequences of those things. They are immature and impetuous, and Mr. Boldon certainly has demonstrated that in his past.

Defense counsel argued Boldon should be given the opportunity to mature without a felony conviction on his record.

The district court denied Boldon's request for a deferred judgment, concluding a term of incarceration was more appropriate. The district court ordered the sentences to be served consecutively for a total term of incarceration not to exceed twelve years. The district court noted Boldon's extensive criminal history. It noted Boldon was adjudicated delinquent for drugs when he was fourteen. The district court noted Boldon was given many opportunities to walk the "straight and narrow" but instead escalated his criminal conduct. As an example, the district court noted Boldon committed first-degree burglary arising out of a crime in which

Boldon and others broke into someone's house and shot the homeowner's dog.

The district court stated:

> While back in the juvenile system you violated your probation eight different ways from Sunday, multiple violations, and again placement in the detention facilities. These multiple crimes, multiple firearms offenses, multiple violent offenses, a prison sentence is appropriate. And for the purposes of the record, and to be abundantly clear, a consecutive sentence is appropriate.

The district court continued:

> Again, I did outline in great detail my reasons for it, but to be clear, I do believe this sentence is appropriate for those reasons. Namely, the nature of this offense, the circumstances of this offense, your relatively young age in comparison to this extensive criminal history with firearms, and given the amount of efforts put forth thus far regarding your chances of -- for reform, in my opinion, are nearly nil.

## II.

Boldon advances several reasons why sections 814.6(1)(*a*)(3) and 814.7 (2020) do not preclude appellate review and relief in this case. First, he claims the new laws are wholly inapplicable here because his right to appeal vested when the court accepted his guilty pleas prior to the effective date of the new laws. Second, he argues the new laws violate the separation-of-powers doctrine. Third, he argues the new laws violate his right to equal protection. Fourth, he argues the new laws violate his right to due process. Fifth, he contends the new laws violate his right to the effective assistance of counsel on appeal. Sixth, even if the new laws are applicable here, Boldon contends he has established good cause to appeal as a matter of right and has asserted a meritorious claim warranting relief. We choose not to address Boldon's numerous constitutional claims because we can resolve this appeal without doing so. *See Simmons v. State Pub. Def.*, 791 N.W.2d 69, 73–74 (Iowa 2010) ("Ordinarily, we look to

statutory issues first in order to avoid unnecessary constitutional questions."). We address each of the nonconstitutional claims below.

A.

Iowa Code section 814.6(1)(*a*)(3) provides a defendant may appeal as a matter of right from a conviction entered upon a guilty plea only when the conviction is for a class "A" felony or the defendant establishes good cause.

Boldon claims section 814.6(1)(*a*)(3) is inapplicable here because his right to appeal vested when the district court accepted his guilty pleas prior to the effective date of the new law. We disagree with Boldon's vesting argument. The statutory right of direct appeal is determined by those laws "in effect at the time the judgment or order appealed from was rendered." *James v. State*, 479 N.W.2d 287, 290 (Iowa 1991) (quoting *Ontjes v. McNider*, 224 Iowa 115, 118, 275 N.W. 328, 330 (1937)). With respect to the provision at issue, we have repeatedly stated it applies to cases where judgment was entered on or after July 1, 2019—the effective date of the legislation. *See State v. Draine*, 936 N.W.2d 205, 206 (Iowa 2019); *State v. Macke*, 933 N.W.2d 226, 231 (Iowa 2019). This is true even where the district court accepted the guilty plea prior to the effective date of the statute.

We addressed the exact fact pattern presented here in *State v. Damme*, 944 N.W.2d 98 (Iowa 2020). In that case, the defendant pleaded guilty to two counts of theft in March 2019. *Id.* at 101. In that case, as in this case, judgment and sentence were entered on July 1, 2019. *Id.* In that case, we concluded the statute was applicable to the appeal, and we applied section 814.6(1)(*a*)(3) to determine whether the defendant had an appeal as a matter of right. *See id.* at 105. As in *Damme*, the new statute controls Boldon's right to appeal.

Boldon argues the amendments should not apply here because the sentencing hearing would have occurred on May 30 but for the sentencing hearing being continued on several occasions. Again, we disagree. The statutory right to direct appeal is determined by those laws "in effect at the time the judgment or order appealed from was rendered." *James*, 479 N.W.2d at 290. This is true without regard to whether the original sentencing hearing was continued and rescheduled. Only this conclusion makes sense. A defendant's right to appeal cannot vest before judgment and sentence is entered; prior to the entry of judgment and sentence there is no final order from which to appeal. *See State v. Olsen*, 180 Iowa 97, 101, 162 N.W. 781, 783 (1917) ("[T]here is no judgment to appeal from, final or otherwise, and there is nothing for this court to review, because appellate jurisdiction is only given to review final judgments in criminal cases."). The earliest date a right to appeal can be acquired is the date of judgment. *See* Iowa Code § 814.6(1) ("Right of appeal is granted the defendant *from*[ ] *a final judgment of sentence* . . . ." (emphasis added)). It is simply immaterial that the original sentencing date was continued until the effective date of the legislative changes.

### B.

Having concluded section 814.6(1)(*a*)(3) is applicable here, we turn to the question of whether Boldon has established good cause to pursue this appeal as a matter of right. Boldon "bears the burden of establishing good cause to pursue an appeal of [his] conviction based on a guilty plea." *Damme*, 944 N.W.2d at 104.

The statute does not define "good cause." In *Damme,* we stated "good cause" within the meaning of section 814.6 means a "legally sufficient reason." 944 N.W.2d at 104. We explained that what constituted a legally sufficient reason was context-specific. *See id.* We

held "that good cause exists to appeal from a conviction following a guilty plea when the defendant challenges his or her sentence rather than the guilty plea." *Id.* at 105. We explained that "[a] sentencing error invariably arises after the court has accepted the guilty plea. This timing provides a legally sufficient reason to appeal notwithstanding the guilty plea." *Id.*

As in *Damme*, Boldon does not challenge his guilty plea. Instead, he challenges the sentencing hearing and his sentence. Boldon contends the prosecutor tainted the sentencing hearing when the prosecutor breached the parties' plea agreement at the time of sentencing. Boldon also contends the district court improperly considered Boldon's juvenile offense history as an aggravating factor when imposing sentence. Because Boldon challenges the sentencing hearing and his sentence, we conclude he has established good cause to pursue this direct appeal as a matter of right.

III.

A.

Boldon contends the prosecutor breached the parties' plea agreement when the prosecutor failed to recommend concurrent sentences, as the parties had agreed, and recommended Boldon pay court costs, to which the parties had not agreed. Boldon's counsel did not object to the alleged breaches, and Boldon contends his counsel was ineffective in failing to object. The State contends this court is without authority to address Boldon's claim of ineffective assistance of counsel on direct appeal. If this court concludes it lacks authority to address the claim on direct appeal, Boldon requests this court adopt plain error review and hold the failure to object to a breach of the plea agreement constitutes plain error.

A defense lawyer's failure to object to a prosecutor's breach of the plea agreement constitutes ineffective assistance of counsel. *See State v.*

*Fannon*, 799 N.W.2d 515, 522 (Iowa 2011); *State v. Horness*, 600 N.W.2d 294, 300 (Iowa 1999). Defense counsel's failure to object to a prosecutor's breach of the plea agreement is a breach of duty owed the client, and constitutional prejudice is presumed. " '[V]iolations of either the terms or the spirit of the agreement' require . . . vacation of the sentence." *Horness*, 600 N.W.2d at 298 (quoting *Stubbs v. State*, 972 P.2d 843, 845 (Nev. 1998)).

The State argues Boldon's claim of ineffective assistance of counsel cannot be resolved on direct appeal pursuant to the revisions to section 814.7. We disagree. In the past we have reviewed an alleged breach of a plea agreement as a claim of ineffective assistance of counsel where plea counsel did not object to an alleged breach. We did so within the legal framework presented by the parties. However, we have not held a prosecutor's alleged breach *must be* or *can only be* resolved as a claim of ineffective assistance of counsel. Defense counsel certainly has a duty to object to a breach of the plea agreement at the time of sentencing for expediency's sake. There may be some circumstances where a breach can be cured at that time. Also, by failing to object, counsel runs the risk that if a breach is not apparent from the record, a postconviction-relief proceeding will be required. However, the failure to object does not preclude appellate review of a prosecutor's alleged breach of the plea agreement.

While some forms of sentencing error require a timely objection or challenge to preserve an issue for appellate review, an allegation the prosecutor breached the plea agreement at the time of sentencing is a species of sentencing error to which the traditional rules of error preservation are inapplicable. *See, e.g.*, *State v. Lathrop*, 781 N.W.2d 288, 293 (Iowa 2010) ("[E]rrors in sentencing may be challenged on direct

appeal even in the absence of an objection in the district court."); *State v. Cooley*, 587 N.W.2d 752, 754 (Iowa 1998) (holding that failure to object did not bar review of error when the district court required defendant to choose between two sentences); *State v. Young*, 292 N.W.2d 432, 435 (Iowa 1980) (holding preservation was not required when the district court considered an improper factor in determining sentence). A prosecutor's failure to abide by the terms of a plea agreement taints the sentencing proceeding. *See Horness*, 600 N.W.2d at 301 (stating the sentencing hearing was "tainted by the prosecutor's improper comments"); *State v. Carrillo*, 597 N.W.2d 497, 500–01 (Iowa 1999) (per curiam) (holding the sentencing proceeding was tainted because "the State's recommendation in violation of its obligations under the plea agreement was a factor which the sentencing court should not have considered in imposing sentence"). The taint is inherently prejudicial and requires the appellate court to vacate the sentence and remand the case for a new sentencing hearing in front of a different judge. *See State v. Lopez*, 872 N.W.2d 159, 181 (Iowa 2015) ("We have repeatedly held that the remedy for the State's breach of a plea agreement as to a sentencing recommendation is to remand the case for resentencing by a different judge, with the prosecutor obligated to honor the plea agreement and sentencing recommendation."); *Horness*, 600 N.W.2d at 301.

This is true even when the prosecutor acknowledges the breach and withdraws the improper remarks. *See Fannon*, 799 N.W.2d at 522 ("We agree with these decisions and hold that the State's conduct during Fannon's sentencing hearing constitutes a breach of the plea agreement that could not be cured by the prosecutor's withdrawal of the improper remarks.").

This is true even where the district court claims its sentencing decision was not affected by the breach of the plea agreement. For example, in *Santobello v. New York*, the prosecutor recommended a one-year sentence contrary to the parties' plea agreement. 404 U.S. 257, 259, 92 S. Ct. 495, 497 (1971). Defense counsel objected to the breach at sentencing, and the district court specifically stated it was "not at all influenced by what the District Attorney says, so that there is no need to adjourn the sentence." *Id.* The Supreme Court nonetheless vacated the sentence, concluding the "interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty" required the result. *Id.* at 262–63, 92 S. Ct. at 499.

And this is true without regard to whether defense counsel objected to the prosecutor's breach of the plea agreement. "While proper use of plea agreements is essential to the efficient administration of justice, improper use of the agreements threatens the liberty of the criminally accused as well as 'the honor of the government' and 'public confidence in the fair administration of justice.'" *State v. Bearse*, 748 N.W.2d 211, 215 (Iowa 2008) (quoting *State v. Kuchenreuther*, 218 N.W.2d 621, 624 (Iowa 1974)). A prosecutor's breach of the plea agreement at sentencing irreparably taints the sentencing proceeding and a claim of breach is reviewable on direct appeal even in the absence of contemporaneous objection.

### B.

We now directly address the merits of Boldon's claim. "The relevant inquiry in determining whether the prosecutor breached the plea agreement is whether the prosecutor acted contrary to the common purpose of the plea agreement and the justified expectations of the defendant and thereby effectively deprived the defendant of the benefit of

the bargain." *State v. Frencher*, 873 N.W.2d 281, 284 (Iowa Ct. App. 2015). Where the prosecutor has agreed to make a particular sentencing recommendation, the prosecutor must do more than "simply inform[] the court of the promise the State has made to the defendant with respect to sentencing. The State must actually fulfill the promise." *Id.* (quoting *Bearse*, 748 N.W.2d at 216).

Boldon has failed to establish the prosecutor acted contrary to the common purpose of the plea agreement and thereby effectively deprived him of the benefit of the bargain. *See id.* Here, the prosecutor recommended concurrent sentences in accord with the parties' plea agreement. The prosecutor stated, "The State is recommending that the counts run concurrently with each other." The prosecutor then went on to discuss those factors that justified incarceration. At no time during the sentencing proceeding did the prosecutor suggest consecutive sentences would be more appropriate than concurrent sentences. The parties agreed the State would recommend concurrent sentences but be free to argue for a term of incarceration while the defendant would be free to argue for a deferred judgment or suspended sentence. That is what occurred.

The fact the parties bargained for a contested sentencing hearing distinguishes this case from those in which the prosecutor technically complied with the plea agreement but expressed material reservations regarding the plea agreement or sentencing recommendation. *See United States v. Cachucha*, 484 F.3d 1266, 1270–71 (10th Cir. 2007) ("While a prosecutor normally need not present promised recommendations to the court with any particular degree of enthusiasm, it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself." (quoting *United States v. Canada*, 960 F.2d 263, 270 (1st Cir. 1992))). Where the prosecutor technically

complied with the plea agreement but expressed material reservation regarding the same, "it can be fairly said the State deprived the defendant of the benefit of the bargain and breached the plea agreement." *Frencher*, 873 N.W.2d at 284.

The expression of a material reservation regarding the plea agreement or recommended sentence can be explicit or implicit. For example, the prosecutor may acknowledge the plea agreement but explicitly express regret for entering into the plea agreement. *See id.* at 285. The prosecutor may also implicitly express a material reservation regarding the plea agreement. For instance, in *Horness*, the prosecutor repeatedly undercut his own "recommendation" by referring to the different sentencing recommendation in the presentence investigation report. 600 N.W.2d at 299. We held the suggestion of a more severe sentencing alternative constituted a failure to abide by the plea agreement. *Id.* at 299–300. In *Bearse* the prosecutor breached the plea agreement by first recommending the sentence in the presentence investigation report. 748 N.W.2d at 216. Only after the district court notified the prosecutor the sentence in the presentence investigation report was inconsistent with the plea agreement did the prosecutor "recommend" the sentence contemplated by the agreement. *See id.* at 213. But even then, the prosecutor reminded the court that it was "not bound by the plea agreement." *Id.* at 216. Similarly, in *State v. Lopez*, we held that the prosecutor violated the spirit of the plea agreement by emphasizing the horrific nature of the offense through the use of witnesses and exhibits to suggest incarceration would be more appropriate even though the plea agreement contemplated probation. 872 N.W.2d at 178–80.

Here, the prosecutor expressed no material reservation regarding the plea agreement. The prosecutor complied with the letter and spirit of

the plea agreement. The prosecutor argued for incarceration as he was allowed to do. The defendant argued for a deferred judgment as he was allowed to do. Although the district court imposed consecutive sentences and a term of incarceration, that was not at the suggestion—either explicit or implicit—of the prosecutor. The prosecutor did not deprive Boldon of the benefit of the bargain. *See Frencher*, 873 N.W.2d at 285–86.

Boldon also argues that the prosecutor breached the plea agreement by recommending court costs when the plea agreement was silent as to court costs. We disagree. Iowa Code section 910.2 authorizes sentencing courts to order court costs. *See State v. McMurry*, 925 N.W.2d 592, 596 (Iowa 2019). In *McMurry*, a plea agreement was silent as to court costs, yet we stated that, "Without an agreement, the sentencing court needs to identify the court costs at the sentencing hearing . . . so that the clerk of court can properly assess them." *Id.* at 601. Here, the plea agreement was silent on the issue. The prosecutor was free to recommend the imposition of costs. Boldon failed to establish a breach of the plea agreement.

C.

Boldon next contends the district court considered an improper sentencing factor at the time of sentencing. At the time he was convicted of this offense, Boldon was eighteen years old. Boldon relies on our recent juvenile sentencing jurisprudence for the proposition that "the diminished culpability of juveniles must always be a factor considered in criminal sentencing." *State v. Null*, 836 N.W.2d 41, 67 (Iowa 2013); *see also State v. Lyle*, 854 N.W.2d 378, 398–400 (Iowa 2014) (relying on a juvenile's diminished culpability to hold mandatory minimum sentence for a juvenile unconstitutional); *State v. Pearson*, 836 N.W.2d 88, 96–97 (Iowa 2013) (holding that mandatory minimum thirty-five-year sentence without the

possibility of parole for an eighteen-year-old defendant required consideration of mitigating factors of youth). Boldon requests this court hold "that it is an improper sentencing consideration for a sentencing court to consider juvenile criminal history of an adult offender without also considering the mitigating features of youth universally attending such juvenile adjudications." He further requests this court hold that the district court must explicitly consider the mitigating features of youth with respect to each adjudication considered and render the culpability accompanying such conduct "necessarily and categorically reduced as a matter of law."

We decline Boldon's requested extension of our juvenile sentencing jurisprudence. A sentencing court's decision to impose a specific sentence that falls within the statutory limits "is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We afford sentencing judges a significant amount of latitude because of the "discretionary nature of judging and the source of the respect afforded by the appellate process." *Id.* at 725. Nevertheless, "[i]f a court in determining a sentence uses any improper consideration, resentencing of the defendant is required . . . even if it was merely a 'secondary consideration.' " *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (en banc) (citation omitted) (quoting *State v. Messer*, 306 N.W.2d 731, 733 (Iowa 1981)).

The district court in this case did not consider an improper sentencing factor by considering Boldon's juvenile offense history without considering the mitigating features of youth associated with each juvenile adjudication and disposition. Iowa Code provides that courts may consider juvenile adjudications and dispositions in sentencing for felonies

and aggravated misdemeanors. *See* Iowa Code § 232.55(2)(*a*) (2019). The Code does not provide any limitation on the manner in which the sentencing court may consider juvenile adjudications and dispositions for the purposes of sentencing, nor does the Code instruct what weight, if any, to give to juvenile adjudications and dispositions at the time of sentencing.

Our juvenile sentencing jurisprudence does not contravene or in any way limit section 232.55. Our juvenile sentencing jurisprudence requires an individualized hearing considering the mitigating factors of youth in those cases involving mandatory minimum sentences. *See State v. Majors*, 940 N.W.2d 372, 386 (Iowa 2020) ("Our decisions have clarified that the sentencing court must consider the [juvenile sentencing] factors in an individualized sentencing hearing if it is contemplating imposing a mandatory minimum sentence on a juvenile offender."). We have also explained how these factors should be considered where (1) the defendant committed the offense as a juvenile, (2) no mandatory minimum is being imposed, but (3) the district court has to decide whether to impose a term of incarceration:

> Once the sentencing court declines to impose a minimum period of incarceration without parole, the *Miller/Lyle* factors remain relevant in considering the remaining sentencing options, along with all other mitigating and aggravating circumstances. Yet the court is not required to specifically examine and apply each factor on the record at this point but considers all relevant factors in exercising its discretion to select the proper sentencing option.

*State v. Crooks*, 911 N.W.2d 153, 173 (Iowa 2018).

Here, Boldon is not requesting the sentencing court be required to consider the mitigating factors of youth with respect to determining the sentence for the offense at issue. This is already required by *Crooks*. Instead, Boldon requests an extension of our juvenile sentencing jurisprudence to require district courts to explicitly consider the mitigating

features of youth with respect to juvenile offense history and discount juvenile offense history because those offenses were committed as a juvenile. We decline to engraft this limitation onto section 232.55. The district court did not consider an impermissible sentencing factor in considering Boldon's juvenile adjudications and dispositions as the Code allows.

## IV.

For these reasons, we affirm the defendant's sentence imposed following his pleas of guilty.

**AFFIRMED.**

All justices concur. Appel, J., files a special concurrence.

**APPEL, Justice (specially concurring).**

I agree with the court that Da'Quon Boldon has established "good cause" for his claim to be considered on direct appeal. I further agree that under the record presented Boldon has failed to make the case that the prosecution breached the plea agreement. I write separately to emphasize that this case does not alter in any way our jurisprudence related to juvenile sentencing.

As noted by the majority, Boldon claims that the district court erred when it considered age as an aggravating factor in sentencing. This case involves the sentencing of an adult offender who committed offenses as a juvenile. It does not involve a mandatory minimum sentence. Because this case involves an adult and does not involve a mandatory minimum sentence, Boldon is not entitled to a separate *Miller*-type hearing to specifically address the mitigating factors of youth. *See Miller v. Alabama*, 567 U.S. 460, 479–80, 132 S. Ct. 2455, 2469 (2012); *State v. Crooks*, 911 N.W.2d 153, 171–73 (Iowa 2018).

That said, the science that underlies our juvenile jurisprudence remains the same regardless of legal context, namely: juvenile offenders because of their youth are generally less culpable than adults, the age of a youthful offender is a relevant factor, and the young age of the offender cannot be considered as an aggravating factor. *See Miller*, 567 U.S. at 471–72, 132 S. Ct. at 2464–65; *Crooks*, 911 N.W.2d at 171–73; *State v. Null*, 836 N.W.2d 41, 54–56 (Iowa 2013). Thus, the mitigating features of age is a factor to consider when sentencing an adult with a history of juvenile offenses.

There is nothing to the contrary in the district court's opinion. But the mere fact that age is a mitigating factor to consider when sentencing

an adult with a history of juvenile offenses does not demand a particular result in this case because it involves the sentencing of an adult offender. As the majority states, there is no *requirement* of some kind of automatic discount in every case where the adult offender being sentenced has a history of juvenile criminal offenses.

So the live-wire question in this case is whether age when he committed his prior offenses was improperly used by the district court as an aggravating factor in the adult sentence in this case. When a sentencing court utilizes an improper factor, the remedy is vacation of the sentence and a remand for resentencing. *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002). But the burden is on the defendant to show that the district court utilized an improper factor before we vacate a sentence on that ground. *State v. Wickes*, 910 N.W.2d 554, 572 (Iowa 2018). Reversal is required even if the improper sentencing factor appears to have been given merely "secondary consideration." *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (en banc) (quoting *State v. Messer*, 306 N.W.2d 731, 733 (Iowa 1981).

But a review of the sentencing transcript, however, reveals that Boldon has failed to show that the district court used age as an aggravating factor. In context, the district court's statement that "your relatively young age in comparison to this extensive criminal history" was a factor in sentencing simply reflects the objective reality that Boldon committed a number of serious offenses in a short period of time. Consideration of the concentration of a large number of serious offenses over a few years is a legitimate factor in sentencing and does not show that the defendant's youthful age was itself improperly utilized as an aggravating factor. Absent a contrary showing, we presume the district court lawfully considered relevant factors in the sentence. *State v. Washington*, 832 N.W.2d 650,

660 (Iowa 2013). Based on my review of the record, I conclude Boldon has failed to show that the district court used an improper factor in sentencing. I concur that the district court did not commit an abuse of discretion in sentencing the defendant.