# IN THE COURT OF APPEALS OF IOWA

---

No. 25-0720
Filed April 15, 2026

---

**State of Iowa,**
Plaintiff–Appellee,

v.

**Jordan Farshid Allen,**
Defendant–Appellant.

---

Appeal from the Iowa District Court for Polk County,
The Honorable Jesse Ramirez, Judge.

---

## SENTENCE VACATED AND REMANDED FOR RESENTENCING

---

Martha J. Lucey, State Appellate Defender, attorney for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, attorneys for appellee.

---

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

Not every unfavorable comment by the prosecutor at sentencing following a guilty plea is a breach of the plea agreement. Jordan Allen challenges both the prosecutor's fidelity to the plea agreement and the district court's exercise of sentencing discretion. But the record reveals no broken promise. And although we find no abuse of sentencing discretion in Allen's carceral sentence, the district court erred in failing to determine whether his sentence should run consecutively to or concurrently with his prior parole sentences. We thus vacate Allen's sentence and remand to the district court for resentencing. We affirm in all other respects.

## BACKGROUND FACTS AND PROCEEDINGS

This case arises from a fatal vehicle-pedestrian collision that occurred on October 21, 2024, in Polk County. In his written plea of guilty, Allen admitted that, on that date, he committed a reckless act by turning the wrong way down a lane and failing to yield and striking S.A., a pedestrian, thereby unintentionally causing her death. He further admitted the reckless act was likely to cause death or serious injury. The underlying minutes reflected that Allen struck S.A. with his pickup truck as she was walking from a designated disabled parking space in a Hy-Vee parking lot in Des Moines. S.A., who was sixty-seven years old, later died from the injuries she sustained.

The record reflects some variation in how witnesses and law enforcement described Allen's driving immediately before the collision. According to the minutes, two witnesses reported Allen was moving slowly, and one witness reported seeing him stop at a stop sign before impact. An officer's review of the surveillance footage showed Allen traveling at a normal speed or slightly faster than other vehicles in the lot. At sentencing, the prosecutor characterized the video differently, asserting Allen was traveling

faster than he should have been in a busy parking lot, failed to stop at a stop sign, turned the wrong way into a marked travel lane, and then struck S.A. The sentencing record reflects that Allen remained at the scene after the collision.

On February 6, 2025, Allen entered a guilty plea to one count of involuntary manslaughter under Iowa Code section 707.5(1)(b) (2024), the reckless-act alternative. The sentencing order reflects that the district court reviewed the signed plea petition, considered Allen's statements, and found he understood the charge, the penal consequences, and the constitutional rights he was waiving. The court further found a factual basis for the plea from Allen's admissions, the prosecutor's statements, and the minutes of testimony accepted as true by Allen, and it accepted the plea as knowing, voluntary, and intelligent.

The plea agreement contemplated a recommendation for probation if Allen complied with recommended substance-use treatment at Bridges of Iowa. Prior to sentencing, Allen entered the Bridges of Iowa program. At sentencing, both parties jointly urged a suspended sentence with probation, continued treatment, random urinalysis testing, and mental-health counseling. The prosecutor's sentencing remarks acknowledged that Allen had accepted responsibility, complied with treatment expectations, and in the State's view, earned the opportunity to continue treatment in the community if he remained compliant.

Before sentence was imposed, a presentence investigation (PSI) report was prepared and reviewed by the court and the parties. The PSI report reflected that Allen had a documented substance-use history, which included a positive fentanyl test from December 24, 2024. At sentencing, defense counsel objected to consideration of the positive test, while the State argued

it was relevant to Allen's substance-use history and rehabilitative needs. The district court stated it would consider the positive test, particularly as it related to Allen's substance-use history outlined in the PSI report.

The sentencing hearing also included statements from the victim's family. S.A.'s surviving sister was an active advocate on her sister's behalf and was dissatisfied with the charge resolution. Both written and oral victim-impact statements were submitted at sentencing and were emotional and forceful.

Allen was afforded his right of allocution before the court imposed his sentence. The court considered the factors set out in Iowa Code section 907.5. The court identified as particularly significant the nature and circumstances of the crime, statutory sentencing requirements, the victim impact statement, protection of the public, the plea agreement, Allen's statement, his age and character, criminal history, employment, substance-use history, family circumstances, propensity for further criminal acts, and the maximum opportunity for rehabilitation.

The district court adjudged Allen guilty and imposed an incarceration term not to exceed two years, with credit for time served. The court denied probation, suspended the fine because of incarceration, and ordered victim pecuniary damages in an amount to be determined, along with other restitution obligations. The sentencing order further set appeal bond at $5,000 cash only. Although the sentence was imposed while Allen was on parole, the sentencing materials do not reflect that the court specified on the record whether the sentence would run concurrently with or consecutively to the parole-revocation sentence.

Allen appeals from the judgment and sentence challenging the sentencing on several grounds, including an asserted breach of the plea agreement and alleged sentencing error. In response, the State defends the prosecutor's compliance with the plea agreement but concedes resentencing is required because the district court did not indicate whether the sentence was to be served concurrently with or consecutively to Allen's prior parole-related sentences.

## STANDARD OF REVIEW

Review of an allegation that the State breached a plea agreement during sentencing is for errors at law. *State v. King*, 576 N.W.2d 369, 370 (Iowa 1998). We review a district court's specific sentencing decision for abuse of discretion. *State v. Laffey*, 600 N.W.2d 57, 62 (Iowa 1999). We will not disturb a sentence unless the defendant proves an abuse of discretion or a defect in the sentencing procedure occurred. *State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998). "An abuse of discretion will only be found when a court acts on grounds clearly untenable or to an extent clearly unreasonable." *State v. Hopkins*, 860 N.W.2d 550, 553 (Iowa 2015) (citation omitted).

## DISCUSSION

Allen contends the State breached the plea agreement by "failing to advocate for a suspended sentence with probation." In addition, he argues that the district court abused its discretion by imposing incarceration. Specifically, he asserts that the court failed to provide adequate reasons for the prison sentence.

## I. Breach of Plea Agreement

When a plea agreement requires the State to recommend a particular sentence, the prosecutor must do more than merely recite the agreement; the State must present the recommendation with its approval and indicate it is worthy of the court's acceptance. *State v. Horness*, 600 N.W.2d 294, 299 (Iowa 1999). The cases Allen relies on illustrate the type of conduct that constitutes a breach and highlight why no breach occurred here.

In *Horness*, the prosecutor nominally recited the agreed recommendation but undercut it by referencing an "alternative recommendation" from the PSI report and describing the defendant's conduct in a manner supporting a harsher sentence. *Id.* at 299–300. The Iowa Supreme Court concluded the prosecutor's comments created ambiguity as to whether the State actually endorsed the agreed-upon recommendation and deprived the defendant of the benefit of the bargain. *Id.* at 300.

Similarly, in *State v. Bearse*, the prosecutor initially recommended incarceration—contrary to the plea agreement—and, even after being corrected, failed to affirmatively advocate for the agreed-upon recommendation, merely suggesting the State would "abide by the agreement." 748 N.W.2d 211, 216 (Iowa 2008). Instead, the prosecutor emphasized the PSI report and reminded the court it was not bound by the agreement, effectively suggesting a more severe sentence than the one promised. *Id.* at 216–17. The supreme court held this conduct breached both the letter and the spirit of the plea agreement. *Id.* at 216.

Allen contends the prosecutor breached the plea agreement by failing to "live up to the spirit of the agreement" by disputing information and arguing factors that undermined the agreement. But the record here stands in sharp contrast to that contention.

First, the prosecutor expressly and unequivocally recommended the agreed-upon sentence (probation), with continued substance-use treatment. Unlike in *Horness* and *Bearse*, the prosecutor did not present competing recommendations, did not reference an alternative harsher sentence, and did not suggest incarceration was more appropriate. The State's recommendation was clear and consistent with the plea agreement.

Second, the challenged remarks (involving the positive fentanyl test, driving conduct, and victim's sister) were made in response to issues raised by the defense or the court and did not undermine the State's recommendation. For example, the prosecutor's comments regarding the positive fentanyl test were made after defense counsel objected to its inclusion in the PSI report. In responding, the prosecutor emphasized the relevance of the information to Allen's substance-use history and need for treatment—considerations directly aligned with the parties' joint recommendation for probation conditioned on continued treatment. The prosecutor did not argue the test warranted incarceration or otherwise suggest a more severe sentence.

Likewise, the prosecutor's characterization of Allen's driving as "quite egregious" was made in rebuttal to defense counsel's attempt to minimize the conduct. Unlike the conduct in *Horness*, the prosecutor did not use this description to advocate for a harsher sentence or to suggest the court should reject the plea agreement. *See* 600 N.W.2d at 299–300. Nor did the prosecutor, as in *Bearse*, invoke the PSI report or the court's discretion in a manner that implicitly encouraged incarceration. *See* 748 N.W.2d at 216–17.

In short, the prosecutor did not "suggest[] more severe punishment than [the State] was obligated to recommend." *See id.* at 216. Instead, the State consistently urged the court to adopt the agreed-upon recommendation

while responding to the court's inquiries and the defense's arguments with relevant information.

Because the prosecutor fulfilled the State's obligation to recommend the agreed sentence and did not undermine that recommendation, we conclude the plea agreement was not breached.

## II. Abuse of Sentencing Discretion

A sentencing "court shall state on the record the basis for the sentence imposed." Iowa R. Crim. P. 2.23(2)(g). The sentencing court weighs "the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform" along with the defendant's criminal history, family circumstances, and the societal goals of sentencing. *State v. Damme*, 944 N.W.2d 98, 106 (Iowa 2020) (citation omitted). The district court's statement may be "terse and succinct" if "the reasons for the exercise of discretion are obvious in light of the statement and the record before the court." *State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015). The district court "has broad discretion to impose the sentence it determines is best suited to rehabilitate a defendant and protect society." *State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022). This discretion "to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor," and we will only reverse for an abuse of discretion. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

At sentencing, the district court gave a lengthy explanation of its decision to not suspend Allen's sentence:

> Thank you. First let me acknowledge the family in the room and the difficulty that this case presents. There are no words that I am going to say that are going to be magical or pronounce this any more than you have already felt.

8

I often think to myself as much as I have been in a courtroom that rarely does anybody walk out of a courtroom happy. The case before us is an aggravated misdemeanor. The maximum punishment is two years in prison.

The court has no ability to determine parole eligibility under these statutory guidelines, place of confinement. Really what this court is determining today is whether or not Mr. Allen should be granted probation under certain terms or if he should be sent to prison for a term not to exceed two years.

I want to acknowledge [S.A.], the victim in this case, and I appreciate the family being here and [S.A.'s sister] making her statement. I also appreciate the attorneys and the work they put into this. I know both of the attorneys. I know how hard they work. I know how good they are at their jobs. I know and appreciate the fact that they have had this case significantly longer than this court has.

Mr. Allen, you are a difficult individual to assess. I believe you when you say you would never intend to hurt people. I think your life based on the criminal history that I have reviewed indicates pretty well on point what this case is, which is a reckless disregard for other people, whether it's fraud, [or] yourself with substances. But regardless, at the end of the day, Mr. Gardner and Miss Livingston have pointed out—and the code states—my goal is to rehabilitate you.

There are no life sentences coming out of this case. At some point you will be a member of somebody's community, and if it's my community I want you at your best. I want you to be clean, I want you to be sober, I want you to be productive, I want you to be working, I want you to be healthy, right?

Tragedy, accident, call it whatever you want to, it's an awful situation today. By no means do I want to inhibit your treatment or your work, but we also need to recognize what occurred in this case. We also need to recognize your history when you present yourself today in this courtroom.

One, I acknowledge your hard work today first. You have done what you need to do in regards to your substance abuse treatment, the terms of the plea agreement. Seems like you have worked hard. You are getting to the age where I would expect to start to see a different level of maturity and

ability to handle yourself in the community. Substances usually take that in a different direction.

I also want to acknowledge your accountability today. You pled guilty today. You acknowledge what you did in October of '24. You acknowledge what you did to [S.A.]. My hope is always that that accountability sticks with you as I hope it sticks with me but regardless of what happens today, you will never require another adult or person to tell you to get clean. You always know that's what you need to do. You don't need a court to do that.

The same applies for employment. Same applies with anything good in your life. You have to work for it. You know what you have to do, and you keep going for it. I hope that after you handle this sentence, you put this in a way in your life where you can move forward as a productive member and none of this happens again.

That's always my hope after sentencing that nothing ever happens like this again. I think you can clearly see the level of pain that your reckless acts have caused in our community.

Taking a look at the sentencing considerations in this case, I'll just note if it was not clear for the record, the court is not considering the specified risk scores, obviously not the dismissed charges. The court is reviewing this case with the maximum opportunity for rehabilitation for Mr. Allen, the protection of the community from further offenses, the nature of the offense, in large part, the attending circumstances, Mr. Allen's age, character and propensities, Mr. Allen's chance at reform, his substance abuse history as well as any noted mental health history that was in the [PSI] Report as well as any mitigating circumstances. The court acknowledges that you served 114 days in the county jail.

The court will adjudge you guilty of involuntary manslaughter. You will be incarcerated for a term not to exceed two years. I'll give you credit for any days that you served. I am going to deny probation. That's based on the sentencing considerations that I have noted.

* * *

Bond on appeal is set at [$]5,000 cash. I'll note, Mr. Allen, regardless of what has occurred, . . . you are going to be released from prison as determined by the [Iowa] Department of Corrections. You have

worked hard to improve your life but this sentence is a reflection of the damage that you have done to the community, and I think if I were in your position, this is the way that I would look at it:

> Despite your best efforts, despite how good you have done, this is still what occurred. What that would tell me is you can soak that in and understand what that means and appreciate the damage that you have done but then understand despite those best efforts that you were still causing extreme harm in our community and now you need to do better.

> Because believe it or not I hope nothing but the best when you come out. I need you to come out of prison and be better and continue on this path that you have created for yourself to get clean, to get sober and to be productive. That's the best way that you can serve this sentence and to repay this damage that you have done. I hope nothing but the best in that regard, Mr. Allen.

Upon our review, we find the district court did not abuse its discretion in imposing a carceral sentence. Each of the factors the district court discussed is a proper sentencing factor. *See* Iowa Code § 907.5. Given the sentence is based on proper factors and is sufficiently explained, we discern no abuse of discretion, and we will not disturb it. *See Formaro*, 638 N.W.2d at 724. To the extent that Allen asks us to reweigh the factors and grant him probation, we decline to do so on appeal. *See State v. Gordon*, 998 N.W.2d 859, 863 (Iowa 2023).

Both parties agree that Allen should be resentenced to address the issue of whether his imposed prison sentence should run concurrent or consecutive to his parole. *See State v. Duffield*, 16 N.W.3d 298, 303–04 (Iowa 2025) (vacating the sentence and remanding for resentencing because the trial court did not state its reasons for imposing consecutive sentences); *State v. Hill*, 878 N.W.2d 269, 273 (Iowa 2016) (same); *State v. Minenga*, No. 24-1215, 2025 WL 2058266, at *1 (Iowa Ct. App. July 23, 2025) (same); *State v. Archer*, No. 24-0293, 2025 WL 271628, at *3 (Iowa Ct. App. Jan. 23, 2025)

(same). And because "[r]emanding this case for resentencing only on the question of whether [Allen]'s sentence should be served concurrent or consecutive to another sentence would deprive the resentencing judge of the full panoply of sentencing options," we must order a full resentencing. *See Duffield*, 16 N.W.3d at 304. Accordingly, we vacate Allen's sentence and remand for resentencing.

In sum, we find no breach of Allen's plea agreement and no abuse of discretion in the imposed carceral sentence. But we vacate Allen's sentence and remand to the district court for resentencing due to the court's failure to determine whether his sentence should run consecutively to or concurrently with his prior parole sentences.

**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**